**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                         No. CR 07-2249 JB

TIMOTHY PATTERSON,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Superceding Indictment or, in the Alternative, to Compel Election of Counts, filed February 1, 2009 (Doc. 38). The Court held a hearing on February 18, 2009. The primary issue is whether the Superseding Indictment against Defendant Timothy Patterson contains multiplicitous counts.[1] Because each of three counts in the Superseding Indictment contains a different factual element from the other two counts, the counts are not multiplicitous, and the Court will deny the motion.

**FACTUAL BACKGROUND**

All of the charges in the Superseding Indictment involve an alleged theft of property from the Veterinary Office of the Crownpoint Institute of Technology ("Institute") on or about October

---

[1] The United States Court of Appeals for the Fourth Circuit has noted: "Various courts, including this one, have spelled multiplicity in its adjective form as 'multiplicious' and 'multiplicitous.' 'Multiplicitous' is apparently the preferred spelling of the term, and 'multiplicious' may be considered obsolete." United States v. Goodine, 400 F.3d 202, 207 n.6 (4th Cir. 2005)(citing B. Garner, A Modern Dictionary of Legal Uses 576-77 (2d ed. 1995)). See Black's Law Dictionary 1036 (7th ed. 1999)(including the spelling "multiplicious" for multiplicity in its adjective form). Cases from the United States Court of Appeals for the Tenth Circuit contain both spellings. The Court will adopt the Fourth Circuit's spelling preference and spell the adjective form of multiplicity as "multiplicitous."

7, 2006.  The United States, on information and belief, based in particular on information that Patterson's counsel provided, states that Patterson will argue that he did not intend to "permanently deprive" the victim of the property he stole.  The United States contends that Patterson will argue that his intent was to use the property as some sort of bargaining chip in a contract dispute Patterson was having with the Institute.  The United States maintains, however, that there is no evidence of a contract dispute or that Patterson made any attempt to use the stolen property as a bargaining chip.

## PROCEDURAL BACKGROUND

On November 6, 2007, a grand jury for the United States District Court for the District of New Mexico returned a single count Indictment, charging Patterson with theft of property that was located in the Navajo Nation, in violation of 18 U.S.C. §§ 661 and 1152.  See Indictment at 1, filed November 6, 2007 (Doc. 2).  After the parties were unable to reach a mutually acceptable disposition of the charge, a grand jury returned a Superseding Indictment, charging Patterson with three criminal offenses: (i) theft of property belonging to the Institute, in violation of 18 U.S.C. §§ 661, 1152; (ii) stealing and converting property belonging to an Indian tribal organization, in violation of § 1163; and (iii) entering a structure in the Institute with the intent to commit a theft of property, in violation of 18 U.S.C. § 1152 and N.M.S.A. 1978, § 30-16-3B.  See Superseding Indictment at 1-2, filed January 8, 2009 (Doc. 30).

Specifically, Count One charges:

### Count 1

On or about October 7, 2006, in Indian Country, in McKinley County, in the District of New Mexico, the defendant, **TIMOTHY PATTERSON**, a non-Indian, did take and carry away with the intent to steal and purloin, property belonging to the Crownpoint Institute of Technology, an institution chartered and operated by the Navajo Nation and the property had a value exceeding $1,000.00.
In violation of 18 U.S.C. §§ 1152 and 661.

Superseding Indictment at 1.  Count Two states in full:

<u>Count 2</u>

On or about October 7, 2006, in Indian country, in McKinley County, in the District of New Mexico, the defendant, **TIMOTHY PATTERSON**, did steal and knowingly convert to his use, property belonging to an Indian tribal organization; that is, the defendant did steal and knowingly convert to his use veterinary medical examination equipment belonging to the Crownpoint Institute of Technology, an institution chartered and operated by the Navajo Nation and the property had a value exceeding $1,000.00.
In violation of 18 U.S.C. § 1163.

Superseding Indictment at 1-2.  Finally, Count Three states in full:

<u>Count 3</u>

On or about October 7, 2006, in Indian Country, in McKinley County, in the District of New Mexico, the defendant, **TIMOTHY PATTERSON**, a non-Indian, entered the structure of the Crownpoint Institute of Technology, an institution chartered and operated by the Navajo Nation, without permission and with the intent to commit a felony and theft therein.
In violation of 18 U.S.C. §§ 1152, 13 and N.M. Stat. Ann. § 30-16-3(B).

Superseding Indictment at 2.

Patterson requests that the Court, pursuant to the Fifth, Sixth, and Ninth Amendments to the United States Constitution, dismiss the allegedly multiplicitous counts contained in the Superseding Indictment or, in the alternative, compel the prosecution to elect between the different criminal charges it is bringing.  Patterson contends that Counts One and Two, Counts One and Three, and Counts Two and Three are all multiplicitous, and charge the same offense, or markedly similar offenses, from the same course of conduct.[2]  Patterson asks that the Court dismiss these overlapping counts because they violate his double jeopardy rights.  In the alternative, Patterson urges the Court to require the United States Attorney's Office for the District of New Mexico to elect which of the

---

[2] Although Patterson contends in the opening of his brief that Counts Two and Three are multiplicitous, he does not argue why they are multiplicitous.

three counts in the Superseding Indictment they will prosecute against Patterson.  The United States disagrees with Patterson's position and urges the Court to reject his motion.

### LAW ON DOUBLE JEOPARDY AND MULTIPLICITOUS COUNTS

The Fifth Amendment's guarantee that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," U.S. CONST., amend. V, protects individuals not only from "successive prosecutions, but also [from] successive punishments for the same offense," United States v. Morris, 247 F.3d 1080, 1083 (10th Cir. 2001)(citing United States v. Dixon, 509 U.S. 688 (1993).  Accordingly, the United States Court of Appeals for the Tenth Circuit's "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause."  United States v. McCullough, 457 F.3d 1150, 1162 (10th Cir. 2006)(internal quotation marks omitted). "'Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior.'" Id. at 1162 (quoting United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997)).  "Although multiplicity is not fatal to an indictment, multiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense."  United States v. McCullough, 457 F.3d at 1162 (internal quotation marks omitted).

The issue of multiplicity may arise when a defendant is faced with an indictment charging multiple violations of the same statute from relatively contemporaneous conduct, such as multiple assault charges stemming from two episodes concerning a prison guard occurring close in time, see United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997)(discussing multiple 18 U.S.C. § 111 charges) abrogated on other grounds by Jones v. United States, 526 U.S. 227 (1999), or simultaneously mailing to the IRS several different false documents in support of a single tax return, see United States v. Bettenhausen, 499 F.2d 1223, 2134 (10th Cir. 1974).  In such situations, the central question is often whether the underlying conduct is part of the same transaction or comprises

distinct episodes that can be punished separately.  See, e.g., United States v. Neha, No. CR 04-1677,

Memorandum Opinion and Order at 3, entered June 20, 2006 (Doc. 130)(D.N.M.)(concluding that

the offenses charged in four counts constituted separate acts and were not multiplicitous charges for

the same offensive conduct because there was more than one rape, because the defendant was the

principal in one rape and the aider and abettor in the other, and because the alleged crimes likely did

not occur at the same time).

      The issue of multiplicity may also arise, as it does here, when the defendant is charged with

violations of multiple criminal statutes for the same underlying acts or omissions.  When confronting

such a situation, courts employ a two-step test.  "A person may be prosecuted for more than one

crime based on the same conduct (1) if each crime requires proof of a fact that the other does not,

or (2) if Congress has clearly expressed its intent to impose cumulative punishment for the same

conduct under different statutory provisions."  United States v. Pearson, 203 F.3d 1243, 1267-68

(10th Cir. 2000)(citations omitted).  When, as is often the case, there is no clearly discernible

Congressional intent to impose cumulative punishment, the rule of statutory construction that is

described in Blockburger v. United States, 284 U.S. 299 (1932), is used.  See United States v.

Greene, 239 Fed.Appx. 431, 436 (10th Cir. 2007)(citing United States v. Morehead, 959 F.2d 1489,

1506 (10th Cir.1992), aff'd on reh'g en banc sub nom. United States v. Hill, 971 F.2d 1461 (10th

Cir. 1992)).

      The Blockburger rule is often known as the "same elements test."  United States v. Pearson,

203 F.3d at 1268.  "The applicable rule is that, where the same act or transaction constitutes a

violation of two distinct statutory provisions, the test to be applied to determine whether there are

two offenses or only one, is whether each provision requires proof of a fact which the other does

not."  Blockburger v. United States, 284 U.S. at 304.  "A single act may be an offense against two

statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."  Id. (internal quotation marks omitted).

As the Supreme Court of the United States has noted in the related context of determining when a jury instruction for a lesser-included offense may be given, an elements test is "certain and predictable . . . . [b]ecause the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial . . . ." Schmuck v. United States, 489 U.S. 705, 720 (1989).  See United States v. Greene, 239 Fed.Appx. at 436 (discussing Schmuck v. United States in context of the Blockburger test).  The Supreme Court has clarified, however, that the Blockburger test applies only to charges or convictions asserting violations of separate statutes and not to separate subsections of the same criminal provision.  See Sanabria v. United States, 437 U.S. 54, 70 n.24 (1978)(noting Blockburger test is used "to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes")(emphasis added).[3]

---

[3] It may also be the case that a Congressional intent not to allow prosecution for the same transaction under different statutes will trump the elements test.  In Ball v. United States, 470 U.S. 856 (1985), the Supreme Court held that a defendant could not be convicted under both then-18 U.S.C. § 922(h) -- prohibiting felons from receiving firearms -- and then-§ 1202(a) -- prohibiting felons from possessing firearms -- for the same firearm.  The Supreme Court used Blockburger v. United States as indicating an intent against cumulative punishment, because receiving a weapon necessarily involved possessing it, thus making the statutes multiplicitous under Blockburger v. United States.  See Ball v. United States, 470 U.S. at 861-62.  The Supreme Court buttressed this position with the intent of Congress expressed in legislative history, however, and also indicated that the Blockburger test was a proxy for the will of Congress.  See Ball v. United States, 470 U.S. at 861-64.  The Blockburger test thus remains good law, but the decision in Ball v. United States indicates that, if a situation arose where the elements test were satisfied, but there was some other clear expression of Congressional intent not to allow cumulative punishment, then Congressional intent would govern and multiple charges for the same conduct would violate the Fifth Amendment. The Blockburger test might be better expressed therefore not as presenting two ways in which cumulative punishment may be allowed -- based on different elements or based on Congressional

As an example of the elements test at work, in United States v. Greene the defendant was charged and convicted for both tax evasion and making a false statement for the same act of filing a form.  The Tenth Circuit held that the convictions were not multiplicitous, because tax evasion required proof of a substantial tax deficiency and an intent to evade taxes, neither of which the other charge required, while the false filing count required proof of knowingly signing a false statement under oath, which was not an element of tax evasion.  See id. at 437-38.  By contrast, in United States v. Morehead, 959 F.2d 1489 (10th Cir. 1992), the Tenth Circuit found convictions under both 18 U.S.C. § 856(a)(1) and § 856(a)(2) to be multiplicitous.  The § 856(a)(2) charge required proof that the defendant knowingly maintained a house for marijuana trafficking, while the § 856(a)(2) charge required proof that the defendant knowingly managed or controlled a house and rented, leased, or made it available for drug trafficking.  See United States v. Morehead, 959 F.2d at 1507.  The Tenth Circuit held that managing or controlling, and maintaining, were the same and that thus the § 856(a)(2) charge had an additional element -- renting or leasing -- that was not in § 856(a)(1), but that 856(a)(1) did not contain any element that was not part of § 856(a)(2).  Accordingly, the counts were multiplicitous.  See United States v. Morehead, 959 F.2d at 1507.

When confronted with a multiplicitous indictment, a trial court has the discretion to dismiss the multiplicitous counts or to require the government to elect between the multiplicitous counts before trial, or to vacate one of the multiplicitous convictions after trial.  See United States v. Johnson, 130 F.3d at 1426 (citing United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990)).  If the trial court allows multiplicitous charges to go to the jury, however, the options are more

─────────────────

intent -- but as being a two-step process in which a court first tries to discover the intent of Congress on the question, whether that intent is for or against cumulative punishment, and if that fails, then resorting to the elements test.

limited: "Where multiplicitous convictions are found, 'the only remedy . . . is . . . to vacate one of the underlying convictions as well as the . . . sentence based upon it." United States v. Barrett, 496 F.3d 1079, 1095 (10th Cir. 2007)(quoting Rutledge v. United States, 517 U.S. 292, 301-02 (1996)). The risk inherent in a failure to dispose of multiplicitous charges before trial is that it "may falsely suggest to a jury that a defendant has committed not one but several crimes." United States v. Johnson, 130 F.3d at 1426 (internal quotation marks omitted). "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue, and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges." Id. (internal quotation marks omitted).

## LAW REGARDING THE FEDERAL CRIMES OF LARCENY AND THEFT FROM INDIAN TRIBAL ORGANIZATIONS

To prove the federal crime of larceny, the United States must present evidence of the defendant's specific intent to "steal or purloin." 18 U.S.C. § 661. The crime of theft from Indian tribal organizations may be committed in several different ways. One of those ways requires only that the defendant "converts to his use" property taken from the organization. 18 U.S.C. § 1163. Conversion is different from stealing. United States v. Morisette, 342 U.S. 246 (1952), was a case principally concerned with whether conversion had an intent requirement. Joseph Morisette had been convicted of conversion for gathering and selling spent bomb casings that were heaped into disorderly piles on an Air Force bombing range in rural Michigan. Morisette believed that the casings had been abandoned, but the trial court refused to allow Morisette to present a defense that his intentions were innocent. See id. at 247-49. The Supreme Court found that criminal conversion required proof of intent. See id. at 273. As part of finding that intent was an element of criminal conversion, however, the Supreme Court discussed how conversion, even with intent as an element,

was distinct from stealing:

> It is not surprising if there is considerable overlapping in the embezzlement, stealing, purloining and knowing conversion grouped in this statute. What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches. The books contain a surfeit of cases drawing fine distinctions between slightly different circumstances under which one may obtain wrongful advantages from another's property. The codifiers wanted to reach all such instances.  Probably every stealing is a conversion, but certainly not every knowing conversion is a stealing.

Id. at 271.  The Supreme Court distinguished stealing and conversion: "To steal means to take away from one in lawful possession without right with the intention to keep wrongfully.  Conversion, however, may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful."  Id. at 271-72 (internal quotation marks & citation omitted).  The Supreme Court went on to list several scenarios that could involve a knowing, intentional conversion that would not amount to stealing, such as: (i) abusing property; and (ii) exceeding the scope of limited permission to use property.  See id. at 272.

The Tenth Circuit has also discussed the distinction between conversion and stealing.  In United States v. Hill, 835 F.2d 759 (10th Cir. 1987), the Tenth Circuit stated:

> The distinction between stealing and conversion turns on how possession is obtained. One who gains possession of property by wrongfully taking it from another steals. One who comes into possession of property by lawful means, but afterwards wrongfully exercises dominion over that property against the rights of the true owner, commits conversion.  There is no way in which both offenses can be committed by the same person involving the same property at the same time for the simple reason that one cannot wrongfully take property and still come into possession of it in a lawful manner.

United States v. Hill, 835 F.2d at 765 (citations omitted).

## RELEVANT NEW MEXICO LAW ON BURGLARY, LARCENY, AND SHOPLIFTING

In New Mexico, state courts have consistently held that larceny, in violation of N.M.S.A.

1978 § 30-16-1, includes different elements than burglary, in violation of N.M.S.A. 1978 § 30-16-3.

See State v. McAfee, 78 N.M. 108, 111, 428 P.2d 647, 650 (1967)(holding that burglary and larceny have different elements and that a defendant could thus be punished for both for the same incident); State v. Deats, 82 N.M. 711, 716, 487 P.2d 139, 144 (Ct. App. 1971)(same). "Burglary consists of the unauthorized entry of [various structures], with the intent to commit any felony or theft therein." N.M.S.A. 1978 § 30-16-3. In State v. McAfee, the Supreme Court of New Mexico stated:

> The crime of burglary is complete when there is an unauthorized entry with the necessary intent; the intent does not have to be carried out after entry. Since stealing is a necessary element of larceny but is not a necessary element of burglary, larceny is not necessarily involved in a burglary. The elements of these two statutory crimes are not the same.

Id., 78 N.M. at 111, 428 P.2d at 650 (citations omitted).

While a defendant may therefore be subject to both burglary and larceny charges, New Mexico state law, under N.M.S.A. 1978 § 30-16-20C, expressly prohibits a defendant from being charged with both shoplifting and another offense arising out of the same conduct. Subsection 30-16-20C reads: "An individual charged with a violation of this section shall not be charged with a separate or additional offense arising out of the same transaction." Accordingly, in New Mexico, the offenses of burglary and of shoplifting may not be separately punished. See State v. Ramirez, 2008 NMCA 165 ¶¶ 13-17, 198 P.3d 866, 869-70.

In State v. Ramirez, the New Mexico Court of Appeals pointed out that "burglary does not have any shared elements with either shoplifting or larceny." Id. ¶ 7, 198 P.3d at 868. "Shoplifting consists of willfully taking possession or concealing of merchandise with the intention of converting it without paying for it. Burglary is the unauthorized entry of any structure with the intent to commit any felony or theft therein." Id. ¶ 6, 198 P.3d at 868 (citations omitted). Nevertheless, the Court of Appeals held that "[t]he plain language of Section 30-16-20C prohibits the State from bringing

additional charges arising out of the same transaction." State v. Ramirez, 2008 NMCA 165 ¶ 16,

198 P.3d at 870.  This statutory prohibition renders charges of shoplifting "null when brought" with

charges of burglary or other charges from the same transaction, and "it is for the State to decide

which charges to bring based upon the circumstances."  Id. ¶ 17, 198 P.3d at 870.

## ANALYSIS

After parsing the three counts in the Superseding Indictment, the Court is persuaded that the

United States' charging is legally justified.  A careful examination of the elements of the three

crimes alleged in the Superseding Indictment reveals that they are not multiplicitous.  The

Superseding Indictment charges Patterson with three distinct and separate crimes that all arose out

of the same conduct.  Each of these crimes, however, contains at least one element that is separate

and distinct from the other crimes charged.  Accordingly, the Superseding Indictment does not

violate Patterson's rights under the Double Jeopardy Clause.

## I.   THE UNITED STATES HAS CHARGED THREE CRIMES ARISING OUT OF ONE TRANSACTION, BUT THAT DOES NOT AUTOMATICALLY MAKE THE SUPERSEDING INDICTMENT MULTIPLICITOUS.

The United States does not dispute that it has charged Patterson with three separate crimes

arising out of the single act of taking property from the Institute in October 2006.  That fact,

however, does not answer, without more, the question whether the Superseding Indictment violates

the Double Jeopardy Clause.  Theft, in the everyday meaning of the word, is the essence of all the

charges, but the test that the Court must apply is more complex.

The test that the Court must apply is whether each charge contains an element that the other

offenses do not contain.  Neither party has argued that there is any expression of Congressional

intent, one way or the other, that would control here.  The Court will thus apply the test the Supreme

Court articulated in Blockburger v. United States.  See United States v. Morehead, 959 F.2d at 1506

(stating that <u>Blockburger</u> test is used when there is no clear Congressional intent to allow punishment for multiple offenses). Both parties in general agreed that the <u>Blockburger</u> test applied. <u>See</u> Transcript of Hearing at 2:25-3:23 (taken February 18, 2009)(Court & Pori)("Tr."); <u>id.</u> at 19:20-21 (Nayback).[4]  Brian Pori, counsel for Patterson, however, contended that <u>Blockburger v. United States</u> was not focused solely on the elements, but on the facts the United States is required to prove. The United States did not necessarily disagree and argued that the facts required to prove each count would be different.

The Court also agrees that, although the test is often known as the elements test, the test itself "is whether each provision requires proof of a fact which the other does not." <u>Blockburger v. United States</u>, 284 U.S. at 304.  Generally, this requirement will boil down to a comparison of elements because the elements of the offense are what establish what facts must be proven.  It is possible that the United States' charging decisions may create a scenario where different elements may nonetheless require proof of the same fact or where two elements are superficially different, but ultimately require proof of the same fact.  <u>United States v. Morehead</u>, which found that managing was the same as controlling or maintaining, may be an example of the former.  <u>See id.</u>, 959 F.2d at 1507.  <u>Ball v. United States</u>, which held that receipt necessarily entailed possession, might be an example of the latter.  <u>See id.</u>, 470 U.S. at 861-62.  Regardless, in this particular case, the difference is only semantic.

## II.   <u>COUNTS ONE AND TWO ARE NOT MULTIPLICITOUS.</u>

Patterson first argues that the Superseding Indictment he is facing is multiplicitous because Counts One and Two charge the same offense, or markedly similar offenses, arising from a single

---

[4] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

alleged incident.  Patterson contends that it is obvious that Counts One and Two of the Superseding Indictment improperly charge identical criminal offenses in only slightly different ways.  Patterson argues that, because there is no evidence that Counts One and Two involve separate and distinct criminal offenses, and because it is clear that the Superseding Indictment charges two criminal offenses based on a single act which require proof that Patterson intended to steal property, the counts are manifestly multiplicitous.

In particular, Patterson emphasizes that Count One charges him with taking "property with the intent to '***steal*** or purloin it' it," while Count Two charges that he "'did ***steal*** and knowingly convert' the same property."  Defendant's Reply to the Government's Response to the Motion to Dismiss or to Compel Election of Counts at 2, filed February 17, 2009 (Doc. 47)("Reply")(quoting Superseding Indictment at 1)(emphasis added by Reply).  At the hearing, the United States countered that it must charge in the conjunctive, but that Count Two will be presented to the jury as asserting alternative theories.  See Tr. at 20:6-13 (Nayback).  The United States argues that therefore, to prove Count Two, they will be proving a different element -- conversion -- than they will be proving in Count One.  Patterson challenges the United States' interpretation of the Superseding Indictment and maintains that the United States should be bound by its decision to charge in the conjunctive and that he has not been given fair notice that the charges against him actually include a count for, in effect, stealing or knowingly converting property belonging to a tribal organization.

Because the United States is correct that it may charge in the conjunctive even when it will present theories in the alternative, the Court must read Count Two of the Superseding Indictment as charging two different theories -- one asserting conversion, the other asserting theft.  Reading Count Two as asserting conversion, without stealing being a required element, Count Two is not

-13-

multiplicitous with Count One.  Furthermore, regardless whether Count Two states a single theory or two theories, the jurisdictional bases for Counts One and Two are different -- Count One is based on the crime occurring in Indian country, and Count Two is based on the crime being against a tribal organization.  These divergent jurisdictional bases create an additional difference between Counts One and Two.

### A. THE UNITED STATES MAY CHARGE ALTERNATIVE THEORIES WITHIN A SINGLE COUNT IN THE CONJUNCTIVE.

Patterson contends that the Superseding Indictment's charging in Count Two that he "did steal and knowingly convert" the Institute's property binds the United States to prove that he both stole and knowingly converted the veterinary equipment.  The United States disagrees and maintains that the use of "and" is read as asserting multiple, alternative theories.  The United States' position is correct.

"The fact that an indictment or information charges in the conjunctive although the statute under which the charge is brought is worded in the disjunctive does not render the indictment or information invalid or the judgment erroneous."  United States v. Smith, 484 F.2d 8, 10 (10th Cir. 1973).  "The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."  Id. (citing Turner v. United States, 396 U.S. 398, 420 (1970)).  In United States v. Smith, the defendant was charged with supplying his employer with a "false and fraudulent" W-4, although 26 U.S.C. § 7205 proscribes wilfully supplying "false or fraudulent information."  The judge instructed the jury in the conjunctive and the jury returned a guilty verdict. The evidence, however, only supported the W-4 being false, not fraudulent.  Nonetheless, the Tenth Circuit upheld the conviction.  The Tenth Circuit stated:

-14-

Often . . . the court will correct the indictment or information by reading the statute to the jury and thus make it clear that only one of the acts charged needs to be proven. But the fact that the trial court does not do so and, in fact, charges the jury in the conjunctive, offers no exception to the general rule.

United States v. Smith, 484 F.2d at 10.[5]

The Tenth Circuit has consistently held that, when the United States charges a crime in the conjunctive, where the underlying statute is disjunctive, the United States need only introduce evidence to prove one of the acts charged. See United States v. Bell, 154 F.3d 1205, 1209 (10th Cir. 1998); United States v. Smith, 484 F.2d at 10. As the Tenth Circuit noted in United States v. Hill, a case in which the prosecution found itself having charged a theory of the crime -- limited only to stealing -- that ultimately proved too narrow to cover the facts: "The government could have charged the § 641 offense in the conjunctive, but it did not do so. Having formed the charge in a limited way, the government cannot now complain that the charge must be dismissed because the evidence demonstrates the wrong choice was made." 835 F.2d at 764. The converse of this proposition is that the United States may charge several alternative theories in the conjunctive if it wants to provide greater coverage for the ways the facts may play out at trial. Accordingly, the Superseding Indictment's use of the word 'and' in Count Two does not require the United States to prove both stealing and conversion to sustain a conviction on Count Two, and the theories being in the alternative is not an unfair surprise to Patterson about what charges he must defend against.[6]

---

[5] A common-sense way of understanding why a conjunctive charge does not require proof of all the acts charged is that a statute framed in the disjunctive may be violated by any of several different acts. A conjunctive charge is an allegation that the defendant violated the statute in all the different ways charged. Any single act being proved will prove a violation of the statute. The 'and' in such a charge refers to the multiple different potential violations of the statute, and not to multiple elements of the same violation.

[6] There is also no argument that the grand jury did not consider the proper elements. By charging in the conjunctive, the grand jury found that there is probable cause that Patterson satisfied

**B.      COUNTS ONE AND TWO EACH CONTAIN AN ELEMENT THAT THE OTHER DOES NOT.**

Count One charges a violation of 18 U.S.C. §§ 661 and 1152.  Section 661 provides: "Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another shall be punished . . . ."  Section 1152 provides that, with certain exceptions, "the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States . . . shall extend to the Indian country."  The elements that the United States will have to prove are to establish that Patterson violated § 661 are that Patterson: "(1) within the special maritime and territorial jurisdiction of the United States; (2) t[ook] and carr[ied] away; (3) with intent to steal or purloin; (4) the personal property of another."  United States v. Spencer, 905 F.2d 1260, 1262 (9th Cir. 1990).  The particular jurisdictional fact that the United States will be required to prove is that the crime occurred in Indian country.

Count Two charges a violation of 18 U.S.C. § 1163.  That statute criminalizes the conduct of someone who "embezzles, steals, knowingly converts to his use or the use of another, willfully misapplies, or willfully permits to be misapplied, any of the moneys, funds, credits, goods, assets, or other property belonging to any Indian tribal organization . . . ."  18 U.S.C. § 1163.  Out of this cluster of choices under § 1163, the United States elected to charge Patterson with stealing and converting.  See Superseding Indictment at 1.

Counts One and Two contain two distinct elements that the other does not.  For Count One, the United States must prove that Patterson took and carried away the equipment with the intent to

---

more elements that the United States intends to prove.  Patterson cannot therefore contend that the grand jury did not consider the element that the United States intends to prove.

steal it.  In Count Two, the United States must instead prove that Patterson knowingly converted the equipment.[7]  Additionally, in Count One, the United States will have to prove that the crime took place in Indian country, but need not show that the Institute is a tribal organization.  By contrast, in Count Two, the United States will have to prove the status of the Institute as a tribal organization, but will not need to prove that the crime occurred in Indian country.

Because the Court must view Count Two as laying out two alternative theories about Patterson's conduct, the United States may prove that Patterson knowingly converted the veterinary equipment.  Conversion is different from theft.  Although Patterson attempts to distinguish Morisette v. United States, that case supports the United States' position.  As Patterson notes, Morisette v. United States read § 641 -- which includes the phrase "knowingly converts," just as § 1163 does -- to require criminal intent for a conversion.  That both stealing and conversion require intent, however, does not make them identical.  The question is: intent to do what?  Justice Jackson's opinion in Morisette v. United States stated that an finding a intent requirement for criminal conversion did not make conversion "a meaningless duplication of the offense of stealing."  342 U.S. at 271.  The Supreme Court noted:

> It is not surprising if there is considerable overlapping in the embezzlement, stealing, purloining and knowing conversion grouped in this statute. What has concerned codifiers of the larceny-type offense is that gaps or crevices have separated particular crimes of this general class and guilty men have escaped through the breaches. The books contain a surfeit of cases drawing fine distinctions between slightly different circumstances under which one may obtain wrongful advantages from another's property. The codifiers wanted to reach all such instances. Probably every stealing is a conversion, but certainly not every knowing conversion is a stealing.

Id.  The Supreme Court distinguished the two categories of crime: "To steal means to take away

---

[7] The United States could also prove Count Two by proving stealing, but this theory might well be multiplicitous were it not for the additional jurisdictional element.

from one in lawful possession without right with the intention to keep wrongfully.  Conversion, however, may be consummated without any intent to keep and without any wrongful taking, where the initial possession by the converter was entirely lawful."  Id. at 271-72 (internal quotation marks, citation omitted).  The Supreme Court went on to list several scenarios that could involve a knowing, intentional conversion that would not amount to stealing, such as: (i) abusing property; and (ii) exceeding the scope of limited permission to use property.  See id. at 272.

Here, under the analogous § 1163, the application of Morisette v. United States leads the Court to conclude that proving a knowing conversion and proving stealing would require the United States to prove different facts.  To prove stealing, the United States will have to show that Patterson had an "intention to keep wrongfully."  Morisette v. United States, 342 U.S. at 271 (internal quotation marks omitted, emphasis added).  To prove conversion, the United States may prove a different intent, such as the intent to wrongfully use the Institute's property as a bargaining chip.[8] In fact, relying on Morisette v. United States, the Tenth Circuit has stated that "[t]he concepts of stealing and conversion are mutually exclusive."  United States v. Hill, 835 F.2d at 764.

> The distinction between stealing and conversion turns on how possession is obtained. One who gains possession of property by wrongfully taking it from another steals. One who comes into possession of property by lawful means, but afterwards wrongfully exercises dominion over that property against the rights of the true owner, commits conversion. There is no way in which both offenses can be committed by the same person involving the same property at the same time for the simple reason that one cannot wrongfully take property and still come into possession of it in a lawful manner.

_____

[8] Patterson also emphasizes that the Supreme Court in Morisette v. United States observed that "[t]he Government apparently did not believe that conversion stood so alone when it drew this one-count indictment to charge that Morisette 'did unlawfully, wilfully and knowingly steal and convert to his own use.'"  Id. at 269-70.  The statute, however, allows for knowing conversion as a stand-alone offense, and in light of the Supreme Court's discussion of the distinctions between criminal conversion and stealing, the Court does not see that this comment on a prosecutor's drafting can be read as holding that conversion cannot be an independent crime.

Id. at 765 (citations omitted).  Because the intent elements are different, charging both stealing and conversion for the same transaction is not multiplicitous.[9]

At the hearing, the United States focused on the conversion theory, but did not indicate that it was dropping the stealing theory in Count Two, so the Court must also consider whether the stealing theory is multiplicitous with Count One.  Although the conversion theory in Count Two is distinct from the stealing charged in Count One, the stealing language in Counts One and Two both present the same basic elements.  The difference between stealing and conversion will not save that indictment from being multiplicitous with respect to the stealing theory in Count Two and the stealing charged in Count One.  The two counts, however, charge crimes with different jurisdictional elements.  Count One requires that the crime be committed in Indian country, but does not require that the victim be a tribal organization.  Conversely, Count Two will require the United States to prove that the crime was against a tribal organization, but the location will be irrelevant.  Jurisdictional requirements are typically elements of a federal offense that the United States must prove beyond a reasonable doubt.  See United States v. Prentiss, 206 F.3d 960, 970-74 (10th Cir. 2000)(discussing case law on jurisdiction in federal crimes and holding that Indian status of defendant an element of 18 U.S.C. § 1152).  Accordingly, the United States will have to prove different facts beyond a reasonable doubt for Count One and for the stealing theory in Count Two.

---

[9] While they are not multiplicitous, it appears that Count One and the conversion theory in Count Two present alternative theories and that Patterson could not be convicted of both stealing personal property in Indian country and conversion of property, given the Tenth Circuit's statements in United States v. Hill that conversion differs from stealing not only in intent, but because of the manner in which the defendant gains possession of property.  Thus, if there is evidence to support both Count One and the conversion theory in Count Two, the Court will need to tell the jury that it cannot convict Patterson of both Count One and the conversion alleged in Count Two.  The jury instructions must indicate that Count One and the conversion alleged in Count Two are in the alternative.

To prove that the crime was committed in Indian country, the United States will be required to prove the geographical location of the crime and the fact that the location was Indian country.  These facts will not show that a crime was against a  tribal organization.  To prove the stealing theory in Count Two, the United States will be required to introduce facts about the owner of the property stolen and that the owner was a tribal organization.  A tribal organization may be located outside Indian country, so proof of these facts will not demonstrate that the crime was in Indian country.

Patterson has not cited, and the Court is not aware of, any decisions holding that jurisdictional elements and the facts required to prove them would be treated differently than other elements under the Blockburger test.  Nor has Patterson pointed to any indication that Congress intended to prohibit separate punishments.  There is also no sound legal reason to treat jurisdictional elements -- particularly here -- differently.  While tribal organization status acts as a jurisdictional hook for Count Two, it also marks off a specific class of victims that the law is protecting.  Moreover, 18 U.S.C. § 1152, the jurisdictional basis for Count One, states: "Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country."  Id. (emphasis added).  The Blockburger test, as Ball v. United States noted, acts as a proxy for Congressional intent.  See Ball v. United States, 470 U.S. at 861-64  Different jurisdictional elements indicates that Congress intended to cover criminal activity that affects different interests -- here, crimes that occur within the special boundaries of Indian country and against tribal organizations as a particular class of victim.  There is no indication that Congress did not intend that conduct touching on these different interests should not be subject to multiple punishments.  While Congress certainly could decide otherwise, Patterson has not pointed to any indication that Congress has made such a decision, nor has the Court

discovered any.  There is thus no basis on which the Court can ignore the result that the <u>Blockburger</u>

test leads the Court to.

### III.   <u>COUNTS ONE AND THREE ARE NOT MULTIPLICITOUS.</u>

Patterson also contends that Count One -- charging larceny in Indian country -- and Count

Three -- charging burglary in Indian country -- are also multiplicitous, although he concedes that

this "involves a closer question of multiplicity."  Motion at 5.  The Assimilative Crimes Act, 18

U.S.C. § 13, assimilates state law for crimes committed within federal territorial jurisdiction:

> Whoever [in an area under federal jurisdiction] . . . is guilty of any act or omission
> which, although not made punishable by any enactment of Congress, would be
> punishable if committed or omitted within the jurisdiction of the State . . . in which
> such place is situated, by the laws thereof in force at the time of such act or omission,
> shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  Because burglary is not a federally defined crime, the laws of New Mexico for

burglary are assimilated in this situation.  <u>See</u> <u>United States v. Wood</u>, 386 F.3d 961, 962 (10th Cir.

2004)(noting that burglary is not defined in federal law).  At the hearing, the United States conceded

that New Mexico decisional law as well as statutory law governs the burglary crime charged in

Count Three.  <u>See</u> Tr. at 25:22-26:3 (Court & Nayback).

In New Mexico, burglary is defined as "the unauthorized entry of [various structures], with

the intent to commit any felony or theft therein."  N.M.S.A. 1978 § 30-16-3.  "The crime of burglary

is complete when there is an unauthorized entry with the necessary intent; the intent does not have

to be carried out after entry."  <u>State v. Ramirez</u>, 2008 NMCA 165 ¶ 6, 198 P.3d at 868 (internal

quotation marks omitted).  Accordingly, New Mexico courts have allowed convictions for both

burglary and larceny from the same transaction.  <u>See</u> <u>State v. McAfee</u>, 78 N.M. at 111, 428 P.2d at

650.  As the New Mexico Court of Appeals stated: "Burglary does not have any shared elements

with either shoplifting or larceny."  <u>State v. Ramirez</u>, 2008 NMCA 165 ¶ 7, 198 P.3d at 868.  This largely disposes of any traditional challenge to Counts One and Three being multiplicitous. Burglary and 18 U.S.C. 661 each contain elements the other does not and so would not be multiplicitous, at least as traditionally understood.

Patterson, however, makes a more refined and indirect challenge to the inclusion of Count Three in the Superseding Indictment.  He contends that N.M.S.A. 1978, § 30-16-20C prohibits separately punishing the same transaction as both burglary and shoplifting.  He agues that, while people have a specific idea about the word shoplifting in everyday speech, the shoplifting statute is worded broadly enough to cover his alleged theft of equipment from the Institute.  The rule of lenity, he urges, requires any ambiguity from such a broadly-worded statute to be construed in his favor.

The reach of N.M.S.A. 1978, § 30-16-20C, however, is not as long as Patterson contends. That subsection of the shoplifting statute reads: "An individual charged with a violation of <u>this</u> section shall not be charged with a separate or additional offense arising out of the same transaction."  <u>Id.</u> (emphasis added).  Patterson has not been charged with a violation of § 30-16-20. The plain language of § 30-16-20C renders that subsection inapplicable to the scenario before the Court.  Nothing in the language of § 30-16-20C indicates that the ban against shoplifting being charged alongside other offenses arising from the same transaction applies to a situation where the conduct arguably <u>could</u> have been charged as shoplifting.  As the Court of Appeals characterized the limitation, § 30-16-20C prohibits "any person <u>charged with shoplifting</u> from being charged with separate or additional offenses arising out of the same transaction."  <u>State v. Ramirez</u>, 2008 NMCA 165 ¶ 13, 198 P.3d at 869 (emphasis added).

Furthermore, Patterson fails to explain why § 30-16-20C is even relevant.  The Assimilative

Crimes Act is a "gap-filling statute[]." <u>United States v. Wood</u>, 386 F.3d at 963 n.2 (internal quotation marks omitted).  18 U.S.C. § 13 incorporates state law to define crimes otherwise outside the realm of federal law.  The relevant crime here is burglary.  There is no sound reason to use § 13 to assimilate N.M.S.A. 1978, § 30-16-20 when the only state crime being charged is burglary, § 30-16-3B.  In <u>State v. Ramirez</u>, the shoplifting convictions were vacated, because shoplifting was charged along with burglary and § 30-16-20C forbid using shoplifting when there were other charges for the same transaction.  The holding depended on § 30-16-20 being a charged offense. <u>State v. Ramirez</u> gave no indication that a crime that could have been charged as shoplifting would bring § 30-16-20C into play.

The rule of lenity does not change the result.  There is no ambiguity in § 30-16-20C.  There might be ambiguity about whether Patterson could be charged with shoplifting, but that is not an issue because Patterson has not been charged with violating that statute.[10]

### IV.    COUNTS TWO AND THREE ARE NOT MULTIPLICITOUS.

It is not clear whether Patterson challenges Counts Two and Three as being multiplicitous. He mentioned this point in his motion and briefly at the hearing, but has not presented any significant argument about them.  Given the Court's discussion, however, Counts Two and Three are not multiplicitous.  Burglary here will require proving entry into a building, a fact not required to show stealing or conversion, while stealing or conversion, unlike burglary, will require proof that Patterson actually gained control of property.  If burglary is not multiplicitous with the stealing in

---

[10] Patterson's argument also involves an interesting application of the rule of lenity upon which the Court need not rule: Patterson is arguing that the shoplifting statute is broad enough that it could cover his conduct.  In effect, he is arguing that the scope of the statute should be read expansively.  Such a reading -- assuming that the remainder of his theory were correct -- might aid him.  A broad reading of a criminal statute, however, would generally not aid defendants as a class and would seem to run afoul of the rule of lenity's purpose.

Count One, it would not be multiplicitous with stealing and converting in Count Two.  Additionally, Counts Two and Three, like Counts One and Two, have different jurisdictional elements.

The Court therefore concludes that none of the counts in the Superseding Indictment are multiplicitous.  Because the Superseding Indictment is not multiplicitous, the Court need not reach the issue whether certain counts should be dismissed or whether it should compel the United States to make an election of counts before trial.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Superceding Indictment or, in the Alternative, to Compel Election of Counts, is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
   United States Attorney
Kyle T. Nayback
   Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Brian A. Pori
Inocente, P.C.
Albuquerque, New Mexico

     *Attorney for the Defendant*